# Stannert v. Williamsport Area School Directors

*Henry G. Hager,* for petitioners.

*Dean R. Fisher,* contra.

WILLIAMS, P. J., November 27, 1962.—On June 6, 1962, the school directors of the South Williamsport Area School District, a third class district, adopted a resolution which in part imposed a tax of one percent on the value of real estate sold or otherwise transferred during the fiscal year 1962-63.

Twenty-five taxpayers of the school district filed their appeal from this tax on July 6, 1962, under the provisions of the Act of September 25, 1961, P. L. 1643, sec. 2, 53 PS §6853.

The petition of appeal, as amended, is to the effect that the tax is not only unlawful, but that it is excessive and unreasonable. Petitioners declare that the tax is unlawful in that the board of directors did not give legal notice as required. They also say that it is unlawful in that it violates the tax limit of the so-called "Tax Anything Act", the Act of June 25, 1947, P. L. 1145, sec. 1, as amended, 53 PS §6851, under which the tax was enacted. This act limits the aggregate amount of all taxes imposed under the act to an amount not to exceed 12 mills of the market value of the real estate in the school district.

Appellants also claim that the tax is unreasonable and excessive and have attempted to prove that the school district is assessing more tax than is necessary.

As to notice, we are of the opinion that proper notice was given. The Act of June 25, 1947, P. L. 1145, sec. 2, as amended, 53 PS §6852, states that such notice shall set forth the substantial nature of the tax, the reason necessitating the imposition of the tax, and the amount of revenue estimated to be derived from the tax. The notice was advertised properly and is to the effect that the school board intended to enact the tax on the transfer of real property on each and every transfer within the district, and that such imposition was necessary to provide funds for general revenue purposes. The notice also shows that the amount of revenue estimated to be derived from said tax was $7,500. Although appellants argue that the tax was not imposed for general revenue purposes, there appears to be no testimony to support their argument.

Did the school board impose the tax in violation of the tax limit set forth in section 1 of the Act of June 25, 1947, as amended, supra?

The section which includes the limitation reads as follows:

"C. The aggregate amount of all taxes imposed by any political subdivision under this section and in effect

during any fiscal year shall not exceed an amount equal to the product obtained by multiplying the latest total market valuation of real estate in such political subdivision, as determined by the board for the assessment and revision of taxes or any similar board established by the assessment laws which determines market values of real estate within the political subdivision, by twelve (12) mills. *In school districts of the second class, third class* and fourth class *and in any political subdivision within a county where no market values of real estate have been determined by the board for the assessment and revision of taxes,* or any similar board, *the aggregate amount of all taxes imposed under this section and in effect during any fiscal year shall NOT exceed an amount equal to the product obtained by multiplying the latest total market valuation of real estate in such school district, or other political subdivision, as certified by the State Tax Equalization Board,* by twelve (12) mills. In school districts of the third and fourth class, taxes imposed on sales involving the transfer of real property shall not be included in computing the aggregate amount of taxes for any fiscal year in which one hundred (100) or more new homes or other major improvements on real estate were constructed in the school district." (Italics supplied.)

The school district says it did not exceed the 12 mill limitation. In its budget, the total tax shown under the "Tax Anything Act" is $266,565. The budget shows that its limitation under this act is $274,075.20. The $274,075.20 was arrived at by taking 12 mills of the market value of real estate as certified by the State Tax Equalization Board. This certified market value was $22,839,600. It appears that the school district also used the market values supplied by this board for the years 1960-61 and 1961-62.

Petitioners complain, however, that the school district has actually imposed more taxes than allowed by

the limitation. They complain that a total of $281,400 has been imposed as follows:

| | |
|---|---:|
| Per Capita Tax | $ 28,120.00 |
| Wage Tax | 75,000.00 |
| Real Estate Trans. Tax | 7,500.00 |
| Occupation Tax | 170,780.00 |
| Total | $281,400.00 |

Petitioners agree with the school district that only $75,000 of wage tax was imposed even though $90,000 was shown on the budget form, but argued that as to the per capita and the occupation tax the school district used an estimate of collection rather than an imposition. Five thousand six hundred twenty-four taxables were certified to the school district by the county commissioners. The district at the rate of $5 a taxable figured a total of $28,120, less 15 percent which it claims will not be collected, or a total of $23,902. It claims this $23,902 is its imposition. As to the occupation tax, the commissioners certified a figure of $1,707,-800 and the school district imposed a tax of 100 mills, but claims its real imposition is $170,780 less 15 percent, or a total of $145,163.

The district's argument is that imposition under the act does not mean tax actually imposed but that it means the tax is reasonably certain to be collected. We cannot agree. We are of the opinion that "imposed" as used in the act means tax actually imposed. Tax laws are to be strictly interpreted and in favor of the taxpayer.

By law a certified duplicate of taxables and assessments of occupations is certified to the district and these are to be used in the imposition of the tax. A district may not rewrite assessed valuations to effect a levy in excess of a tax limitation. Uncollectability has no application when validity of a levy in excess of that fixed by

the legislature is considered: Philadelphia & Reading Coal & Iron Company v. Mt. Carmel Township School District, 351 Pa. 156.

School districts cannot first determine the amount of money to be received from the maximum levy upon the assessed valuation and then formulate its own valuation on the basis of uncollectability and impose a levy in excess of that fixed by the legislature. To allow this would defeat the very purpose for which the limitation is placed. The limitation was placed in the act to protect taxpayers and to allow an uncertain tax base would cause uncertainty and great difficulty in determining just what percentage of tax is imposed.

We hold that the tax actually imposed was $281,400, and that the 12 mill limitation is $274,075.20, and that therefore the limitation has been exceeded.

The district has argued that although in its budget it used the market value of real estate as supplied by the State Tax Equalization Board, it may also use the market value as supplied by the chief assessor of Lycoming County for the year 1962-63. If it uses the latter figure the limitation has not been exceeded. Section C of the "Tax Anything Act", as quoted in this opinion, specifically declares that school districts of the third class, the class in which this district finds itself, shall not impose taxes in excess of an amount equal to the product obtained by multiplying the latest total market value of real estate in such school district as certified by the State Tax Equalization Board. We are of the opinion that no rule of construction will allow us to interpret this section of the act in any other way than that this board's figures must be used.

The school district used a real estate market value of $22,839,600, which it received from the State Equalization Board near July 1 of 1961. This market value was used in figuring the tax limitation. Too late for the 1962-63 budget advertising it received a market

value of $23,372,600, in June of 1962. No matter which market value is used, the imposition exceeds the tax limitation. It has been held, however, that if it is impossible to secure an adjusted valuation for the year of the tax, then valuation for the previous year may be used: Quemahoning Coal Company v. Township of Jenner, 83 Pa. Superior Ct. 577.

We are also of the opinion that the real estate transfer tax is not necessary and therefore unreasonable and excessive even though we feel the intentions of the directors were the best.

It was levied to help pay $80,000 of salaries for the months of July and August of 1963. These two months are not in the 1962-63 school year. The school year for which the taxes were levied began July 1, 1962, and ends June 30, 1963.

The district claims that it will owe these two months of salary on July 1, 1963, that therefore the money should be available at that time.

We are not convinced that the district will owe the $80,000 on July 1, 1963, and even if we were to so find, the district does not intend to pay salaries, except as heretofore. Salaries heretofore have been paid in monthly payments during a 12 month period, with the first payment being in September.

The contracts of the teachers have been dictated by the legislature. The contract form is spelled out in the act pertaining to salaries. This area district uses this form. The contracts read that the employe is to serve for a term of 185 days "for an annual compensation . . . payable monthly or semi-monthly during the school term or year." Even though the school term is the period from the opening to the closing of the school, and the school year is from July 1 to June 30, the district has elected and agreed with the teachers to pay in monthly installments during a 12 month year beginning in September. If the district were making a change in

order to pay on a term basis it would need this money at the end of the term. The district does not intend to do so and therefore an excessive amount of money will be in the school treasury at the end of the year.

It has been argued that there may be a redistricting and that in this event the district as it now exists will have to make up the two months of salaries. It will be easier for the district to tax if there is any realignment of districts, rather than return excessive taxes to the taxpayers.

Besides we are of the opinion that there will be sufficient taxation for these two months of salaries in question from the other levies. In the past this school district has always taken in more money than anticipated. In the 1961-62 budget there was a balance anticipated of $52,274.82, whereas there was an actual balance of $67,389.84. The 1962-63 budget indicates that there will be $2,137.40 at the end of the year, and this after $80,000 is collected for the two months salaries in question. Although the borough took a share of the wage income tax estimated at $60,000, the school real property levy increased from 29 to 39 mills and a proposed gain of $80,389.55, and the occupation tax millage was increased from 50 to 100, for a proposed gain of $74,833.

In addition, the school district as in the case of all other municipalities is not in the position of an ordinary person. If insufficient taxes are levied, there is always a next year and the same taxables.

### Order of Court

And now, November 27, 1962, the court finds that that part of the resolution or ordinance of the South Williamsport Area School District which imposes a tax of one percent on the value of real estate sold or otherwise transferred in the district for the fiscal year 1962-63 is unlawful; the court also finds that such tax is excessive and unreasonable. It is further ordered

and decreed that if no appeal is taken from this order and decree within 30 days that the money already collected because of this tax be returned to the person or persons authorized to receive the same.